[Crim. No. 269.   Fourth Appellate District.—July 23, 1934.]

## THE PEOPLE, Respondent, v. WALLACE LEE GROVES, Appellant.

126

Smith & Perkins for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was convicted of the crime of manslaughter and has appealed from the judgment and from an order denying a motion for a new trial.

One Crawford Clark, who was the manager of a collection agency at Brawley, had a claim against the appellant which was, in part, disputed by him. Clark had been trying to locate the appellant's automobile and about 5:30 o'clock on the evening of February 14, 1934, on one of the main street corners in Brawley, one Palmquist told the appellant that Clark was looking for his car. While they were talking they saw Clark coming down the street and Palmquist left. The appellant testified that when he saw Clark he said to Palmquist, "There he is, I will see him"; that he then walked up to Clark and Clark asked him about the bill; that he told Clark he did not owe it all, but was intending to pay it; that Clark replied: "You owe it all, all right, you just

don't want to pay it''; that Clark then asked him where his automobile was; that he told him and then called him a son-of-a-bitch and further said: "It is time you were leaving me alone''; that Clark thereupon struck at him with his right hand; that he knocked Clark's blow off; that Clark kept coming; that "we had three or four licks''; that Clark clutched him; and that "while he had his hands up there he had his head out and I hit him three or four times as hard as I could''. He further testified that as he jerked loose "I hit him and knocked him over against the bank building and down he went,'' and that "I saw he was out when he hit the window.''

A merchants' patrolman testified that he was across the street when his attention was called to the trouble; that when he looked he saw the deceased lying on the sidewalk with the appellant standing beside him; that after he looked he saw the appellant strike the deceased twice and, he thought, a third time. Another witness testified that after he saw the officer run across the street he saw a man lying on the sidewalk, that he started to run up that way, and that just before he got there the appellant "was leaning over him and made two passes or strikes at him about the face''. Another witness testified: "I was walking along and I walked up down to the bank and I saw that man laying down on the ground and I saw the other man hit him in his face with his feet.'' One of appellant's witnesses testified: "Well, I was just walking along there and all at once I seen a couple of parties starting to fight, at least this big heavy-set fellow, the one with the glasses on, he made a pass at Groves. At the time I didn't know Groves. I had never met Groves until the first inquest that they had there, and they kind of had a little struggle and they were fighting there and I seen Mr. Clark make a pass at Mr. Groves and didn't hit him. He didn't hit him and he kept coming toward Mr. Groves and Mr. Groves whaled him one and hit him in the mouth and he went against the bank and the right side of his head hit the bank wall and he went right on down''. Another witness for the appellant testified: "There were only two blows I could see and that was one struck by each one of the two, the short man struck at the tall man and missed him and the other one hit him and knocked him down. Q. You said the first thing that

attracted your attention was an officer trying to arrest him?
A. Well, it looked like it from where I was standing. The
shortest man seemed to be walking over to him or grabbing
for him or trying to get him to come back, that's the reason
I didn't think it was a fight when I first saw it." There is
evidence that the appellant was much taller than the de-
ceased, that the appellant weighed 170 pounds and that the
deceased weighed about 135 or 140 pounds. A doctor was
called almost immediately, but when he arrived Clark was
dead. The doctor testified that the deceased died as a re-
sult of a fractured skull, and an undertaker gave the follow-
ing testimony with respect to marks on the body: "The
lower lip was cut on the right side of the face, quite a
piece cut out, you might say, and there was a long mark of
some kind over the left eye, across the forehead, running
diagonally like across the forehead, and two light ones on
the right ear. There were several marks about three inches,
two and a half to three inches long around the left ear, and
quite a bruised place in the temple over the left eye." He
further testified that these marks "didn't look like they
were made with a man's fist". Another undertaker testified
as follows: "There were abrasions and lacerations on both
sides of his head and across his forehead. The lower lip
on the right side was cut and a chunk was taken out that
you could lay your small finger in. Especially on the
temple on the left side of his head he had cuts and bruises."
In response to a question by the court he further testified
that these marks "had the appearance of nails". '

The appellant contends that the evidence is not suffi-
cient to support the verdict, it being argued that it con-
clusively appears that the deceased was the aggressor; that
the appellant did nothing more than protect himself from an
unlawful attack; that he acted only in self-defense; that he
used no more force than necessary; and that the unfortunate
result was purely accidental. When asked on cross-exam-
ination why he applied the epithet to the deceased, the
appellant answered "because he had just made a remark
that I owed a bill and didn't want to pay it and I thought
I would show him where to head in". The evidence justifies
the inference that the appellant was the real aggressor in
starting this fight, that he used far more force than was
necessary, and that he continued his attacks after he knew

his victim had become unconscious. Without going into a technical analysis of the evidence it is sufficient to say that the real question presented was one of fact and the evidence supports the conclusion reached by the jury.

██ The appellant complains of several instructions. It is argued that two of the instructions given assumed "unlawful violence" on the part of the appellant and in effect informed the jury that he was guilty of such unlawful violence. These contentions are without merit, and neither instruction contains any such assumption. One of them related to whether the death of the deceased had been accelerated by unlawful violence. The instruction expressly left to the jury both the question of acceleration and the question as to whether unlawful violence had been used. The other, one of the instructions upon self-defense, was entirely general and made no reference to the appellant or to the facts of this particular case. ██ It is further contended that another instruction, although proper in itself, should not have been given because it related to justifiable homicide while the appellant relied entirely upon excusable homicide. It was not too clear that the appellant was confining himself to one defense, and some evidence was brought out to the effect that the appellant was somewhat in fear of the deceased. Under the circumstances it was proper for the court to give full and complete instructions covering the matter of self-defense, which was done. If it be assumed that this particular instruction was unnecessary, no prejudice appears and the error, if any, could not be held to be prejudicial.

██ The only other point raised is that the court erred in admitting into evidence an automobile operator's license which had belonged to the deceased. This seems to have been introduced because of a statement contained therein as to the weight of the deceased in 1932. The appellant concedes that the point is a minor one and, assuming the license to have been inadmissible, there was ample other evidence as to the weight of the deceased and it is not possible that the matter could have affected the result.

The judgment and order appealed from are affirmed.

Jennings, J., concurred.

Marks, J., being absent, did not participate herein.